**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**KEVIN PETER WARD, individually and
on behalf of all others similarly situated,**

**Plaintiff,**

**-vs-**                                                                                   **Case No.  6:15-cv-474-Orl-22DAB**

**EZPAWN FLORIDA, INC. d/b/a VALUE
PAWN AND JEWELRY, EZCORP, INC.,
and VALUE FINANCIAL SERVICES,
INC.,**

**Defendants.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:   MOTION TO DISMISS FIRST AMENDED COMPLAINT (Doc. No. 41)**
>
> **FILED:      September 8, 2015**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED;** however, it is further **RECOMMENDED** that the assertions seeking to impose a civil penalty be **stricken** from the Amended Complaint, as set forth below.

**I. Background**

Plaintiff, individually and on behalf of similarly situated others, brings this purported class action against Defendants Ezpawn Florida, Inc. d/b/a Value Pawn and Jewelry, Ezcorp, Inc., and Value Financial Services, Inc. (collectively "Defendants"), seeking "to secure redress because Defendants willfully and wrongfully collected fees for services they did not render to Plaintiff and

the putative class" (Amended Complaint, Doc. 36).  According to the allegations, Defendant Ezpawn Florida, Inc. d/b/a Value Pawn and Jewelry ("Ezpawn") is a wholly-owned subsidiary of Defendant Ezcorp, Inc. ("Ezcorp"), and both are providers of pawn loans (Am. Comp. ¶¶ 2-3). Defendant Value Financial Services, Inc. ("VFS") owned and operated a chain of pawn shops in the states of Florida and Georgia under the name Value Pawn & Jewelry for over 20 years (¶ 4). Ezcorp acquired VFS in 2009, and continues to operate those locations under the name Value Pawn & Jewelry (¶ 4).

According to the allegations, "Plaintiff and the members of the putative class obtained loans from Defendants, but were charged improper fees upon repayment of the loan" (¶ 1).  Specifically, Plaintiff alleges that Defendants are charging a $2.00 "Affidavit Fee" to Florida customers – regardless of whether the customer's Transaction Form is available and presented or, lost, destroyed, or stolen – and never obtains a written statement of the loss, as is required in §539.001(13)(b) of the Florida Pawnbroking Act, Fla. Stat. §539.001, *et seq*. "In other words, Defendants charge Florida customers the $2.00 "Affidavit Fee," but never perform the statutorily required services entitling Defendants to collect the fee" (¶ 7).

Plaintiff sues for damages for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*("FDUTPA") (Counts One and Two); for injunctive relief and restitution pursuant to Fed. R. Civ. P. 65, and Fla. Stat. §§ 501.207(3), 501.2077(4), 501.211(1) (Count Three); for a Declaratory Judgment finding the Defendants' conduct in violation of the FDUTPA, and enjoining Defendants from continuing such conduct (Count Four); and for damages for unjust enrichment (Count Five). Defendants bring the instant motion to dismiss and Plaintiff has filed his response (Doc. 42).  Upon review of the filings and the applicable law, it is **respectfully recommended** that the motion be **denied**. To the extent the Amended Complaint purports to seek to impose a civil penalty on Defendants for violation of Chapter 539 (*see* the last sentence of allegation

76; the last sentence of allegation 88; and subsections "c" and "d" of the prayer for relief on pg. 22), however, it is **recommended** that those allegations be **stricken.**

**II. Pleading Standards**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a)(2). "[D]etailed factual allegations' are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id. (quoting Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). This requires the plaintiff to plead facts allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. (citing Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

In considering a motion to dismiss under Rule 12(b)(6), a court must accept the well-pled factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**III. Discussion**

In their motion, Defendants contend that the pleading must be dismissed because: 1) it is a "shotgun" pleading; 2) it fails to comply with heightened pleading requirements of Rule 9(b); 3) it

fails to allege a claim under FDUTPA; 4) it fails to allege a claim for unjust enrichment as the pawn loans are written contracts; and 5) there is no provision for "aiding and abetting" liability under FDUTPA. The Court addresses each objection in turn.

*"Shotgun" pleading*

Defendants claim that the Amended Complaint is an "improper, confusing, and frustrating" shotgun pleading. Claiming that it is "impossible to sort out the facts that allegedly support each individual count," Defendants urge dismissal. The undersigned is not persuaded.

It is true that Plaintiff's Amended Complaint re-alleges and incorporates by reference preceding allegations, meeting the literal definition of "shotgun" pleading. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("[s]hotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense"). However, the typical shotgun pleading purports to incorporate disparate allegations, often not connected or related to each cause of action pled. *See, e.g., Wagner,* 464 F. 3d at 1279-80 ("The central problem is that the factual particularity of the first 175 paragraphs is not connected to the otherwise generally pled claim in any meaningful way."). Indeed, as the Eleventh Circuit has observed, with shotgun pleadings, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). The instant pleading, while not a model of clarity, does not fit this description. Rather, the pleading presents a factual scenario alleged to be the basis for *all* of the counts. There is no genuine confusion and the pleading is not subject to dismissal on this ground.

*Rule 9(b)*

Defendants next contend that the pleading does not meet with the particularity requirement of Federal Rule 9(b) in that "the Amended Complaint fails to allege how a $2 contract charge

allegedly constitutes a deceptive or unfair trade practice." Plaintiff responds that this rule does not apply and the allegations are adequate, in any event.

Although Judge Conway has observed that "claims arising under the FDUTPA must be pled with particularity," *Meitis v. Park Square Enterprises, Inc.*, No. 6:08–cv–1080–Orl–22GJK, 2009 WL 703273 at *2 (M.D. Fla. Jan. 21, 2009), there is a recognized split of authority on this issue, even within this District. *See Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F.Supp.2d 1279, 1290 (M.D.Fla. 2009) (court "not convinced" that specificity requirements of Rule 9(b) apply). The undersigned need not wade into this issue, however, as the allegations here meet the particularity standard.

As Judge Corrigan recently observed in a FDUTPA class action suit arising from the charging of alleged false or inflated fees:

> Rule 9(b)'s requirement of particularity "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001) (quotation and citation omitted). Rule 9(b)'s particularity requirement "is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* (quotation and citation omitted). Finerman has alleged that when he booked a specific cruise through Marriott, he was billed for $566.17 in government and port fees by Marriott, he inquired about the fees with Marriott, and Marriott and/or its agent collected and retained these fees that were either inflated or not owed and which were not paid to the government or the port. See Doc. 2 (Complaint) at ¶¶ 15, 17, 18, 19, 20, 35, 36, 37. Even if a heightened pleading standard is warranted, the Court finds Finerman's allegations satisfy it.

*Finerman v. Marriott Vacations Worldwide Corp.*, No. 14-CV-1154(TJC), 2015 WL 5440611 at *3 (M.D. Fla. Sept. 15, 2015). The instant allegations are similar to those deemed sufficient in *Finerman.* Plaintiff has alleged that he was charged a $2 fee, the fee was collected regardless of

whether statutory services were actually performed, and Defendants retained the fee, which was not owed. *See* Am. Comp. at ¶¶ 27-46. Dismissal is not warranted on this ground.

*Pleading FDUTPA*

Defendants next assert that Plaintiff has failed to allege a claim under FDUTPA because: 1) such claims can only be brought by an enforcing authority; 2) this is, at best, a contract dispute and Plaintiff had knowledge of the charge; and 3) the Florida Pawnbroking Act does not provide a basis for a FDUTPA claim. Plaintiff counters that this is an action for violation of FDUTPA and for unjust enrichment, not for breach of contract, and Plaintiff asserts that he is not seeking to "enforce" the Florida Pawnbroking Act. Upon review, Defendants are partially correct, but dismissal is not warranted.

Plaintiff alleges that "Defendants are liable for a civil penalty of $10,000 [or $15,000] for each willful violation of Chapter 539, Florida Pawnbroking Act" (Am. Comp. ¶¶ 76, 88), and seeks imposition of this penalty in the relief requested. *Id.,* p. 22. Pursuant to the state statute, such penalties are reserved for the enforcing authority[1] and Plaintiff presents nothing to support imposition of this civil penalty as a private remedy here. That said, a civil penalty is not the sole remedy Plaintiff has sought with respect to the conduct alleged. Plaintiff also seeks remedies available to aggrieved consumers under Fla. Stat. §501.211 (Am. Comp. ¶¶ 75, 87). As such, the Court recommends that the claims stand, but that portions of the allegations and prayer for relief be stricken, to the extent they seek imposition of civil penalties under Fla. Stat. §501.2075.

As for the other objections, Defendants' contention that this is a contract dispute misses the mark. The allegations purport to address a practice of overcharging customers by imposing a fee that is *not* set forth in any contract between the parties. There is no claim for breach of contract pled, nor

---

[1]*See* Fla. Stat. § 501.2075.

could Plaintiff obtain relief by seeking specific performance of the transaction form. The gravamen of the claim is that Defendants insisted on payment of an *extra*-contractual fee, with no justification for doing so.

The Court is also not persuaded that Plaintiff's awareness of the fee transforms his payment into a voluntary act, not subject to challenge under FDUTPA. Defendants rely on *Hutson v. Rexall Sundown, Inc.,* 837 So.2d 1090 (Fla. 4th DCA 2003) for the proposition that actual knowledge of an alleged practice negates a FDUTPA claim. As noted by Judge Corrigan, however, that holding is of limited utility in an overcharge case:

> Both of the cases BellSouth relies on in its motion, *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090 (Fla. 4th DCA 2003), and *Green v. McNeil Nutritionals, LLC*, No.2004-0379-CA, 2005 WL 3388158 (Fla.Cir.Ct. Nov. 16, 2005), merely hold that a plaintiff must prove actual damages. In *Hutson*, the plaintiff filed a class action alleging that the defendant engaged in deceptive conduct under the FDUTPA by misrepresenting the amount of calcium in a nutritional supplement. 837 So.2d at 1091. The plaintiff claimed she had suffered damages because each pill contained less calcium than represented, increasing the cost of a daily dose. *Id.* The court explained that "[b]ased on the facts of this case, a person who had actual knowledge of the number of softgels needed to be taken per serving would not have suffered any damages as a result of the alleged deceptive trade practice and, therefore, would have no cause of action." *Id.* at 1093. Similarly, in *Green,* the plaintiff brought a class action claiming that the defendant had engaged in deceptive advertising with regard to its product, Splenda. 2005 WL 3388158, at *1. The plaintiff contended that the defendant's deceptive advertising caused consumers to believe that Splenda is natural and contains sugar. *Id.* The court held that "whether a purported class member suffered a loss depends on the individual's reason for purchasing Splenda." According to the court, if a customer bought Splenda with the understanding that it was not a natural product, he was not harmed by the defendant's deceptive advertising. *Id.* at *7.
>
> Unlike in the instant case, the plaintiffs in *Green* and *Hutson* only suffered damages if they were actually deceived by the defendants' conduct. Consumers in those cases who purchased the product with full knowledge of its contents received the same product they bargained for and thus were not harmed by the defendant's deceptive advertising. Unlike the consumers in *Green* and *Hutson*, plaintiffs in this case suffered damages by paying BellSouth's alleged overcharges regardless of their knowledge regarding BellSouth's billing practices. If BellSouth had not charged the disputed amounts, plaintiffs would have paid BellSouth less for the damage to its facilities. In fact, the court in *Green* distinguished cases where "each member of the respective class sustained a loss whether or not he relied on the defendant's alleged violation of FDUPTA." *Id.* at *7.

> \* \* \*
> The class members' alleged awareness that BellSouth was charging indirect costs, however, is simply not relevant to the issue of whether BellSouth was deceptive by charging amounts that it was not entitled to recover under Florida law.

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommunications, Inc.*, 275 F.R.D. 638, 644-46 (M.D. Fla. 2011).

Defendants' next contention is that Plaintiff is attempting to create a private right of action under the Florida Pawnbroking Act. Noting that nothing in the Act grants enforcement rights to private individuals, Defendants argue that Plaintiff "has no legal right to complain about Value Pawn's record keeping, record retention, or clerical activity."  Further, Defendants maintain that Plaintiff cannot use a common law claim or other statutory claim to "bootstrap" a private right of action under the Pawnbroking Act, citing *Carrero v. LVNV Funding, LLC*, 2014 WL 6433214, at \*2 (S.D. Fla. Oct. 27, 2014).

Accepting as true the well-pled allegations of the Amended Complaint, Plaintiff is not suing over "record keeping, record retention, or clerical activity."  Plaintiff is suing "because Defendants willfully and wrongfully collected fees for services they did not render . . ." (Am. Comp. ¶ 1). Similarly, Plaintiff is not suing for relief under the Florida Pawnbroking Act.  Plaintiff pleads FDUTPA and unjust enrichment claims.  Viewed favorably, the allegations relating to this Act are pled as evidence of the claim; they do not purport to be the claim itself.

Moreover, the reliance on *Carrero* is misplaced. In *Carrero, supra*, suit was brought against a debt collector pursuant to the Fair Debt Collections Practices Act and the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559,55–559.785 ("FCCPA") for attempting to collect debts in the state without first registering with the state, as required by state law. The Southern District granted a motion to dismiss a claim for violation of the FCCPA "[s]ince FCCPA does not create a private right of action for violation of the registration requirement in § 559.53."  2014 WL 6433214, at \*2.  The

FCCPA is not at issue here, however, and Plaintiff is not suing because Defendants violated a statutory requirement. Plaintiff is suing because he and other consumers are allegedly being charged a fee without any legal basis for doing so.[2]

Moreover, *Carrero* has been distinguished in a recent FDUTPA case from the same district, which reached the opposite result. In *Pincus v. Speedpay, Inc.,* No. 15-80164-CIV-MARRA, 2015 WL 5820808 (S.D. Fla. Oct. 6, 2015), the claimant presented claims for unjust enrichment, money had and received, and FDUTPA, based on alleged violations of Florida Statutes §§ 501.0117 and 560.204, neither of which purports to provide a private right of action. As framed by the *Pincus* court:

> The question before the Court, however, is whether Plaintiff can seek relief for harm allegedly caused by acts violative of these statutes under recognized common law and statutory vehicles for redress, despite the absence of a legislatively created right of action within the statutes themselves. The Court answers that question in the affirmative.

2015 WL 5820808 at *2-4 (concluding that "that even though the statutes in question do not create private rights of action, Plaintiff may proceed with common law or other statutory causes of action that exist if the elements of those claims are properly stated").

As this Court recognized in *Meitis:*

> FDUTPA proscribes any unfair or deceptive acts or practices committed in the conduct of any trade or commerce. Fla. Stat. § 501.204(1). "To state a claim under the FDUTPA, a party must plead: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F.Supp.2d 1314, 1326 (M.D.Fla.2007). "While 'deception' and 'unfair practice' are not defined under FDUTPA, the Eleventh Circuit and the Florida Supreme Court have noted 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Maguire v. S. Homes of Palm Beach*, 2008 WL 2474657 at *6 (S.D.Fla. June 17, 2008) (*quoting Scott v. Capital One Bank*, 2008 WL 2157037 at *2 (M.D.Fla. May 20, 2008)).

---

[2] Plaintiff's position is that, because Defendants are not complying with its terms, the Pawnbroking Act does *not* provide a basis justifying the imposition of the charge. While *Carrero* involves an alleged act of *omission* (failure to register as required by state law), this suit involves allegations of *commission* (collecting a fee without any basis for same in state law).

2009 WL 703273, at *2.  Here, Plaintiff has adequately alleged an unfair practice that caused actual damages.  The Court finds that the motion does not present sufficient grounds for dismissal of the FDUTPA counts.

*Unjust Enrichment*

Defendants argument for dismissal of the unjust enrichment count is as follows:

> Florida law is clear that unjust enrichment is not an appropriate claim when the Plaintiff has alleged express written contracts. *Berlinger v. Wells Fargo, N.A.*, 2014 WL 7073757 at &*5 (M.D. Fla. Dec. 15, 2014). In this case, Ward attached his written contracts. Thus the claim for unjust enrichment should be dismissed.

(Doc. 41, p. 8).  As noted above, Plaintiff pleads no contract claim here and nothing in the transaction forms attached to the Complaint purports to address or include the $2 charge at issue.  Thus, the charge could not arise from the contract itself and the contract provides no remedy for Plaintiff. *See Morris v. ADT Sec. Services*, 580 F.Supp.2d 1305, 1312-13 (S.D. Fla. 2008) (claim for unjust enrichment may proceed where plaintiff had not asserted a claim based on an express contract); *AutoNation, Inc. v. GAINSystems, Inc.*, No. 08–61632–CIV, 2009 WL 1941279, at *4–5 (S.D. Fla. July 7, 2009) (general rule prohibiting quasi-contractual claim where parties are privy to a contract does not apply when the quasi-contractual claims concern matters which are outside the scope of the contract).

*Aiding and abetting*

Finally, Defendants assert that Plaintiff has failed to allege a claim against Ezcorp and VFS for aiding and abetting as there is no such liability under FDUTPA.  While Defendants acknowledge that FDUTPA liability can extend to individuals who directly participate in an unfair or deceptive consumer transaction, *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 945 F. Supp. 2d 1331, 1345 (M.D. Fla. 2013), they argue that the absence of any specific allegations that Ezcorp or VFS directly participated in the transactions forecloses this avenue. Plaintiff counters that joint liability is adequately pled.

There is no separate count pled for "aiding and abetting."  Rather, Plaintiff has alleged that "Defendants" are jointly responsible for the actions complained of, asserting that:

-10-

> All of the Defendants conspired, jointly caused, knowingly participated and/or aided and abetted each other in the wrongful conduct described and alleged hereinafter so as to be jointly and severally liable to Plaintiff for each of the acts, omissions, breaches, malfeasance and causes of action set forth herein. At all times relevant to this lawsuit, Defendants EZCORP and EZPAWN had in place or implemented corporate policies that governed, controlled, and instructed Defendants as to as to the manner in which they were to conduct daily business operations.

(Am. Comp. ¶ 20).

Plaintiff has alleged that Ezpawn and VFS are wholly owned subsidiaries of Ezcorp, and that all of the Defendants are pawnbrokers. *Id.,*¶¶ 2-4. As the Amended Complaint pleads the counts against Defendants collectively and alleges corporate policies pertinent to the collective Defendants, Plaintiff has complied with the pleading standards sufficient to avoid dismissal on this ground.

### IV. Conclusion

Accepting the well-pled factual allegations of the complaint as true and construing all inferences derived from those facts in the light most favorable to the plaintiff, the Court finds that the Amended Complaint adequately states its causes of action, save for the allegations seeking relief reserved to the enforcing authority under state law, and it is therefore **RECOMMENDED** that the motion to dismiss be **DENIED**, and that the assertions seeking to impose a civil penalty be **stricken** from the Amended Complaint.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on October 28, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy