**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KEVIN PETER WARD, individually and
on behalf of all others similarly situated,**

        **Plaintiff,**

**v.**                                        **Case No:  6:15-cv-474-Orl-22DAB**

**EZPAWN FLORIDA, INC. d/b/a
VALUE PAWN AND JEWELRY,
EZCORP, INC., and VALUE
FINANCIAL SERVICES, INC.,**

        **Defendants.**

**ORDER**

This cause comes before the Court on Defendants' EZPAWN Florida, Inc. d/b/a Value Pawn and Jewelry, Ezcorp, Inc., and Value Financial Services, Inc. (collectively, "Defendants") Objection (Doc. No. 49) to the Magistrate Judge's Report and Recommendation (the "R&R") (Doc. No. 45).  The R&R pertains to Defendants' Motion to Dismiss (Doc. No. 41) Plaintiff's Kevin Peter Ward ("Plaintiff") Amended Complaint (Doc. No. 36).

**I.  <u>BACKGROUND</u>**

Defendants seek to dismiss Plaintiff's five-count Amended Complaint under Federal Rules of Civil Procedure (the "Rules") Rule 12(b)(6).  (Doc. No. 41).  The Amended Complaint alleges that Defendants improperly imposed a two-dollar "affidavit fee" to all pawn loan transactions. (Doc. No. 36 ¶ 7).  Plaintiff asserts claims on his behalf and for a putative class containing two subclasses: a "Non-Seniors Class" and a "Seniors Class."  (*Id*. at ¶ 47).  As the R&R comprehensively captures the background and details of the Amended Complaint, this Court adopts that recitation of the facts.

The Magistrate Judge recommended that Defendants' motion be denied. This recommendation is based on the Amended Complaint being clear enough to avoid being a "shotgun pleading," and that the allegations are sufficiently pleaded under Rule 8(a) or, in the alternative, Rule 9(b)'s heightened standard. (Doc. No. 45 p. 5). It further notes that Plaintiff's claim under the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") should stand, except for the portion regarding civil penalties because imposing them is reserved for entities with enforcement authority, not private citizens. (*Id*. at p. 6). Accordingly, the Magistrate Judge recommended striking the prayer for relief to the extent that it pertains to civil penalties. (*Id*.). The R&R also suggests that Plaintiff sufficiently pleaded a claim for unjust enrichment because the claim does not arise from the terms of a contract. (*Id*. at 10). Lastly, it recommends that Plaintiff did not separately allege aiding and abetting; instead, he purports that the Defendants acted conjointly as the principal and subsidiaries of one entity. (*Id*. at 10-11).

## II. <u>LEGAL STANDARD</u>

District judges review *de novo* any part of a magistrate judge's recommended disposition of a dispositive motion once a proper objection is made. Fed. R. Civ. P. 72(b)(3). Objections must be made within fourteen days after a magistrate issues a recommendation. 28 U.S.C. § 636(b)(1)(C). *De novo* review, however, does not shield the magistrate's findings from the "clearly erroneous doctrine" but it also does not require a second evidentiary hearing. Fed. R. Civ. P. 72 advisory committee's note to 1983 addition; *See United States v. Raddatz*, 447 U.S. 667 (1980). Therefore, district judges "may accept, reject, or modify, the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

## III.  DISCUSSION

Complaints "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"to survive a Rule 12(b)(6) motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining a claim's plausibility "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679; *Jacobs v. Tempur-Pedic Intern., Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010).

Defendants timely filed an objection to the Magistrate Judge's recommended disposition. In their objection, Defendants contend that (1) the Florida Pawnbroking Act (the "FPA") permits charging the affidavit fee, (2) Plaintiff does not sufficiently plead a claim under the FDUTPA for lack of alleging deceptive conduct, and (3) Plaintiff does not sufficiently plead an unjust enrichment claim because it is based solely on a violation of the FPA.  Therefore, the following analysis pertains only to these three portions of the R&R.  28 U.S.C. § 636(b).

### A.  *The Affidavit Fee*

Section 13(b) of the FPA provides parameters for pawnbrokers to assess a two-dollar fee on pledgors that are missing pawnbroker transaction forms when seeking to retrieve their pledged items.  Defendants argue that the fee was assessed according to the statute.  (Doc. No. 49 pp. 5-7). The relevant provision states the following:

> "[i]f a pledgor's copy of the pawnbroker transaction form is lost, destroyed, or stolen, the pledgor must notify the pawnbroker in writing by certified or registered mail, return receipt requested, or in person evidenced by a signed receipt, and receipt of this notice invalidates the pawnbroker transaction form if the pledged goods have not previously been redeemed. Before delivering the pledged goods or issuing a new pawnbroker transaction form, the pawnbroker must require the pledgor to make a written statement of the loss, destruction, or theft of the pledgor's copy of the pawnbroker transaction form. The pawnbroker must record on the

Case 6:15-cv-00474-ACC-DAB   Document 79   Filed 03/09/16   Page 4 of 8 PageID 33451

written statement the type of identification and the identification number accepted from the pledgor, the date the statement is given, and the number of the pawnbroker transaction form that was lost, destroyed, or stolen. The statement must be signed by the pawnbroker or the pawnshop employee who accepts the statement from the pledgor. A pawnbroker is entitled to a fee not to exceed $2 in connection with each lost, destroyed, or stolen pawnbroker transaction form and the taking of a properly prepared written statement."

Fla. Stat. § 539.001(13)(b).

Defendants construe this to mean that the fee applies to missing transaction forms regardless of customers signing written statements declaring a transaction form missing. (Doc. No. 49 pp. 6-7). The Amended Complaint, however, states that the suit's basis is that "Defendants charge a $2.00 'Affidavit Fee' to Florida customers – regardless of whether the customer's Transaction Form is available and presented or, lost, destroyed, or stolen . . . ." (Doc. No. 36 ¶ 7). Defendants' objection does not sufficiently account for affidavit fees assessed to pledgors that have their transaction forms. Furthermore, the statute's last sentence is contrary to Defendants' interpretation—the fee is permissible when there is a missing transaction form *and* a prepared written statement. This supports the FPA's legislative intent to promote accurate recordkeeping to prevent theft.[1] There is little reason to believe that the Florida legislature did not intend for the statute's purpose to contemplate a thief attempting to pawn stolen goods as well as one falsely attempting to claim goods pledged by rightful owners. Thus, the written statement documents that

---

[1]    *See Florida Pawnbroking: An Industry In Transition*, 23 Fla. St. U. L. Rev. 995, 1013 (1996) ("The main impetus behind the law was to confront the problem of property theft and drug-related crimes by facilitating recovery of stolen goods and apprehending those criminals who may turn to secondhand dealers for cash.") (citing Fla. H.R. Comm. on Crim. Just., SB 16-B (1989) Staff Analysis 6 (final June 22, 1989) (on file with Comm.).

the transaction form is missing and prevents a potential thief that finds it from attempting to claim the pledged items.

### B.   FDUTPA Claim

Plaintiff has sufficiently pleaded the specific allegations of a FDUTPA claim.  This is a three-pronged inquiry: a party must plead "(1) a deceptive or unfair practice; (2) causation; and (3) actual damages."  *Meitis v. Park Square Enters., Inc*., 2009 WL 703273, at * 2 (M.D. Fla. Jan. 21, 2009) (quoting *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1326 (M.D.Fla.2007)).   Defendants contend that Plaintiff has not adequately alleged "deceptive" conduct as required by the first prong.  (Doc. No. 49 p. 7).  "Deception" occurs when "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Meitis*, 2009 WL 703273, at *2.  The Amended Complaint states that, "on at least one occasion, a store clerk told Plaintiff he was 'instructed to apply the $2.00' for all pawn loan transactions."  (Doc. No. 36 ¶ 32).  It is plausible, taking Plaintiff's allegations as true, that the statement from the store clerk is a representation that is likely to mislead a pledgor to believe that the fee is a part of the transaction when in fact it only applies to missing transaction forms.  *See Iqbal*, 556 U.S. at 678.  Discussion regarding the FPA being a predicate offense is not necessary because Plaintiff is not alleging liability under the FPA as a ground for violating the FDUTPA.  (Doc. No. 42 p. 2).

### C.   Unjust Enrichment Claim

Defendants argue that Plaintiff cannot allege a common law cause of action based on a statutory violation.  (Doc. No. 49 pp. 9-10).  The FDUTPA's language, however, anticipates that a restitution-based cause of action could affect its application.  This Court agrees that "[j]udicially inventing a right to sue . . . ignores not only the formal separation of powers but also the legislature's superior legislative competence . . . ."  *Hucke v. Kubra Data Transfer Ltd*., No. 15-

cv-14232, slip op. at 8 (S.D. Fla. Nov. 9, 2015).  However, *Hucke* additionally notes that when a plaintiff "alleges no injury apart from violation of the statute . . . there must be 'something more,' in terms of statutory language or public policy to allow the plaintiff to bring a restitution–based cause of action based solely on violation of the statute." *Id*. at 9.

Both provisions of the FDUTPA cited in the Amended Complaint include "something more" as *Hucke* references.  For starters, the Florida legislature intends for the FDUPTA to be interpreted expansively when it comes to consumer protection:

> The provisions of this part shall be construed liberally to promote the following policies:
>
> . . .
>
> (2) To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce . . . ."

Fla. Stat. § 501.202.

With this backdrop, the statute accounts for restitution claims that could arise from violating it. Section 501.2075 allows courts to waive "any . . . civil penalty if the person, firm, corporation, association, or entity . . . has previously made full restitution or reimbursement or has paid actual damages to the consumers or governmental entities who have been injured by the unlawful act or practice or rule violation."  Similarly, § 501.2077 also provides that "[a]n order of restitution or reimbursement based on a violation of this part committed against a senior citizen . . . has priority over the imposition of civil penalties for such violations pursuant to this section."

These provisions are distinguishable from the authority Defendants cite.  *Hucke* expressly relies on *Buell v. Direct General Insurance Agency*, an unpublished opinion from the U.S. Court of Appeals for the Eleventh Circuit involving a statute dissimilar to the FDUTPA.  267 F. App'x

907 (11th Cir. 2008).  In *Buell*, the plaintiff brought a putative class action against an insurer asserting that it engaged in "sliding," a deceptive trade practice prohibited by the Florida Unfair Insurance Trade Practices Act (the "FUITPA").  Affirming the district court's dismissal of the action, the court recognized that private remedies existed for certain provisions in the FUITPA.  Because the prohibition against sliding was not among those provisions, the court deemed this as "highly probative evidence that the Florida legislature intended the violations alleged . . . not to give rise to any private remedy."  *Id*. at 909.  This is opposite of §§501.2075 and 501.2077 of the FDUTPA because both anticipate instances where plaintiffs will bring suits for restitution.

As a result, Plaintiff is not precluded from claiming unjust enrichment.  "If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment."  *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab*, 739 F.3d 579, 584 (11th Cir. 2013).  An unjust enrichment claim requires that "1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value."  *Pincus v. Speedway, Inc*., 2015 WL 5820808, at *4 (S.D. Fla. Oct. 6, 2015).  Here, Plaintiff alleges that he paid the fee despite having his transaction form, and Defendants received, and did not return, the money Plaintiff paid.  This is a sufficiently pleaded unjust enrichment claim.

## IV.  CONCLUSION

Therefore, based on the foregoing, it is **ORDERED** as follows:

1.  Defendants' Objection (Doc. No. 49) filed on November 12, 2015 is **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation (Doc. No. 45), issued on October 28, 2015, is **ADOPTED and CONFIRMED** and made a part of this Order.

3. Defendants' Motion to Dismiss (Doc. No. 41), filed September 8, 2015, is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on February 16, 2016.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
Magistrate Judge Baker